11 CIV 5735

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SINIA JONES,

                Plaintiff,

       vs.

THE CITY OF NEW YORK, a municipal entity,
MICHAEL BLOOMBERG, Mayor of the City of
New York, RAYMOND W. KELLY, New York City
Police Commissioner, POLICE OFFICERS JOHN
DOE and RICHARD ROE (names and number of whom
are unknown at present), and other unidentified members
of the New York City Police Department,
New York City Police Supervisors
and Commanders RICHARD ROEs 1-50,

                Defendants
------------------------------------------------------------X

COMPLAINT



**JURY TRIAL
DEMANDED**

## PRELIMINARY STATEMENT

1.     This is civil rights action in which the Plaintiff seeks relief for the Defendants' violation of her rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United States Constitution, including its Fourth, Fifth, Sixth and Fourteenth Amendments, and by the laws and Constitution of the State of New York. Plaintiff was falsely arrested by members of the New York City Police Department (hereinafter "NYPD") and maliciously prosecuted and unlawfully strip searched and subjected to an invasive search of her chest and genital area.

2.     Plaintiff identifies as a transgender woman. Consistent with Plaintiff's identity, this complaint refers to Plaintiff with female pronouns.

3.     Defendant City is liable for the individual Defendants' acts under the theory of

*respondeat superior*. At the time of the incidents, they were acting under color of state law in the course and scope of their employment at Defendant City and/or the NYPD, an agency of Defendant City.

4. Defendant City is also liable pursuant to Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978). Plaintiff's constitutional rights and resultant injuries were substantially caused by Defendant City's institution or implementation of grossly negligent, reckless and or deliberately inadequate policies or customs subjecting transgender individuals to invasive searches of their chest and genital areas and/or partial or full strip searches conducted for the purpose of ascertaining genital status. The policies, practices and/or customs of Defendant City and the NYPD also included a deliberate indifference to properly train, supervise, or discipline their employees who engaged in the above constitutional violations.

5. Plaintiff also seeks a declaratory judgment that the policies, practices and/or customs described herein violate the Fourth, Fifth, Sixth and Fourteenth Amendments;

6. As a result of the aforementioned constitutional violations, Plaintiff suffered emotional, mental and psychological pain and suffering.

## JURISDICTION

7. This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4) and the aforementioned statutory and constitutional

provisions.

8. Plaintiff further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that give rise to the federally based claims and causes of action.

## VENUE

9. Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391, (a), (b) and (c) and § 1402 (b) because the claims arose in this district.

## PARTIES

10. Plaintiff is and was at all times relevant herein a resident of the City of New York, State of New York.

11. Defendant BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the NYPD, and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

12. Defendant KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

13. New York City Police Officers John Doe and Richard Roe (names and number of whom are unknown at present), and other unidentified members of the NYPD, are and were at all times relevant herein officers, employees and agents of the NYPD. Officers John Doe and Richard Roe are being sued herein in their individual capacities.

14. New York City Police Supervisors and Commanders Richard Roes 1-50 are and were at all times relevant herein involved in the implementation of the challenged policies and practices in question herein to unreasonably seize, detain and invasively search Plaintiff, or failed to intervene to prevent violations of Plaintiff's constitutional rights on March 19, 2007. They are sued individually and in their official capacities.

15. New York City Police Officers John Doe and Richard Roe (names and number of whom are unknown at present), and other unidentified members of the NYPD, are and were at all times relevant herein officers, employees and agents of the NYPD. Officers John Doe and Richard Roe are being sued herein in their individual capacities.

16. Upon information and belief, Defendants BLOOMBERG and KELLY, and New York City Police Supervisors and Commanders Richard Roes 1-50, were personally involved in formulating and/or implementing the policies and procedures that resulted in Plaintiff's unlawful arrest, detainment and invasive search on November 4, 2010.

17. At all times relevant herein, Defendants BLOOMBERG, KELLY, and New York City Police Supervisors and Commanders Richard Roes 1-50, either personally or through their subordinates, acted under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or the City of New York (hereinafter "Defendant CITY").

18. Each and all of the acts of the Defendants alleged herein were undertaken by said Defendants while acting in the course and scope of their duties and functions as agents, employees, and officers of the City of New York and/or the NYPD when engaging in the conduct described herein.

19. At all times relevant herein, Defendants acted for and on behalf of the City of New York and/or the NYPD in furtherance of their employment by Defendant CITY, with the power and authority vested in them as officers, agents and employees of the City and/or the NYPD and/or incidentally to the lawful pursuit of their duties as officers, employees and agents of the City and/or the NYPD.

20. Defendant CITY is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

## DEFENDANTS' POLICIES, CUSTOMS, AND PRACTICES

### Defendant's policy, custom, or practice of engaging in unlawful searches of transgender detainees

21. Upon information and belief, Defendants CITY, BLOOMBERG, KELLY and New York City Police Supervisors and Commanders Richard Roes 1-50 have adopted, implemented and/or enforced a policy, practice or custom of subjecting transgender individuals to invasive and overly intrusive searches of their persons, in the absence of individualized suspicion that they are concealing

weapons or contraband, for the sole, improper, and unlawful purpose of ascertaining their gender or genital status.

22. According to "Stonewalled: Police Abuse and Misconduct Against Lesbian, Gay, Bisexual and Transgender People in the U.S." (Amnesty International 2005), numerous transgender individuals detained by the NYPD have alleged that they have been subjected to unlawful and invasive searches of their persons, including, but not limited to, unnecessary and inappropriate touching or squeezing of their chest and genital areas, as well as partial and full strip searches, performed in the absence of individualized suspicion that they were concealing weapons or contraband, by the NYPD officers acting under color of law, for the purpose of determining their gender or genital status.

23. Plaintiff, a transgender woman, was, pursuant to such a policy, practice, and/or custom, subjected to a forcible, violent, overly intrusive and invasive search of her person, against her will and without her consent, by Defendant POLICE OFFICERS JOHN DOE and RICHARD ROE (names and number of whom are unknown at present), and other unidentified members of the New York City Police Department (hereinafter "Individual Police Defendants") for the purpose of determining her gender or genital status, during her detention. Upon information and belief, defendants John Doe and Richard Roe, and other unidentified members of the NYPD, failed to intervene to prevent said search.

24. The policies, practices or custom of Defendants CITY, BLOOMBERG, KELLY and New York City Police Supervisors and Commanders Richard Roes 1-50, subjecting transgender individuals to invasive and overly intrusive searches of their chest and genital areas and/or partial or full strip searches conducted for the expressed purpose of ascertaining gender or

genital status violated Plaintiff's Fourth, Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution, their counterpart provisions in the New York State Constitution, and New York State statutory and common law.

## STATEMENT OF FACTS

25. In the evening on November 4, 2010, Plaintiff was with a friend at a restaurant in the vicinity of 189th Street and the Grand Concourse, Bronx, New York.

26. Upon leaving the restaurant, Plaintiff left her friend and began walking home.

27. At 189th and Crescent Avenue, an unknown man approached Plaintiff and asked her if she knew where to buy drugs.

28. Plaintiff told the man that she did not know and kept walking.

29. Plaintiff did not know the man.

30. While walking to her residence, an NYPD van approached and stopped Plaintiff.

31. The Individual Police Defendants asked her if she had knowledge concerning drug activity in the area and if Plaintiff knew the identity of the man that approached her.

32. Plaintiff denied any knowledge regarding drug activity in the area or the identity of the man.

33. The Individual Police Defendants asked her to produce identification.

34. Plaintiff informed the Individual Police Defendants that she did not have her identification with her. She offered to go to her residence and retrieve it.

35. A female police officer exited the police van and stated to the other Individual Police Defendants that "we don't' know what it is" and proceeded to conduct a pat down search of Plaintiff.

36. Plaintiff complied.

37. The female police officer did not find any drugs, contraband, or illegal items on

Plaintiff.

38. The Individual Police Defendants informed Plaintiff that it was necessary to perform a warrant check on her. They indicated to her that if she did not have any warrants, she would be released.

39. A warrant check was completed and Plaintiff did not have any warrants.

40. Nonetheless, the Individual Police Defendants seized Plaintiff and transported her to the 52nd Precinct.

41. At the 52nd Precinct, the Individual Police Defendants informed Plaintiff that she was being charged with loitering for the purpose of prostitution. Plaintiff denied that she was loitering for the purpose of prostitution.

42. The Individual Police Defendants did not recover any money, condoms or other indicia that Plaintiff was loitering for the purpose of prostitution.

43. Despite having no probable cause to arrest and prosecute Plaintiff, Defendant New York City Police Supervisors and Commanders RICHARD ROEs 1-50, reviewed, approved, and ratified the arrest of Plaintiff.

44. The Individual Police Defendants questioned her gender identity, asking her if she was male or female.

45. While detained, Plaintiff contacted her fiancée.

46. Her fiancée brought Plaintiff's identification to the 52nd Precinct.

47. Plaintiff's identification indicates that she is female.

48. Plaintiff was held at the 52nd Precinct for several hours.

49. Plaintiff was repeatedly mocked and harassed by officers who walked by.

50. A few hours later, Plaintiff was brought to the back of the precinct.

51. There, a female officer told Plaintiff to put her hands up against the wall. She then put her hands under her bra and underwear.

52. Plaintiff became extremely alarmed, uncomfortable and fearful.

53. ~~After touching Plaintiff's private parts, the female officer called for another officer~~ who placed Plaintiff in a cell.

54. The female officer reported to her male superiors, Defendant New York City Police Supervisors and Commanders RICHARD ROES 1-50, that she believed Plaintiff was female.

55. Defendant New York City Police Supervisors and Commanders RICHARD ROES 1-50 ordered the female officer to search Plaintiff again to determine her gender.

56. The female officer told Plaintiff again to put her hands up against the wall. She then put her hands under her bra and underwear.

57. Plaintiff became increasingly alarmed, uncomfortable and fearful.

58. After touching Plaintiff's private parts again, the female officer called for another officer who placed Plaintiff in a cell.

59. After being held at the precinct for several hours, Plaintiff was transported to Bronx Central Booking in the Bronx.

60. At Central Booking, Plaintiff expressed concern to several officers about adverse treatment from other inmates because of her transgender identity.

61. In a holding cell in the bullpen area of the first floor, Plaintiff was subjected to a search by three female African American officers.

62. One of the officers pulled Plaintiff's pants down, and told Plaintiff to spread her legs apart.

63. Plaintiff complied.

64. She then put her hands under Plaintiff's bra and underwear.

65. Following the search, the officers then debated as to whether Plaintiff was male or female.

66. Plaintiff was transported to the second floor of Bronx Central Booking where she remained for several hours.

67. Plaintiff was finally released on November 5, 2010 after being notified that the Bronx

9

District Attorney declined prosecution.

## Plaintiff's Injuries and Damages

68.  As a direct and proximate consequence of the aforementioned actions by the Defendants, Plaintiff:

   (1) Suffered severe emotional and mental anguish and pain;

   (2) Suffered psychological injuries;

   (3) Was denied her state and federal constitutional rights and liberties;

   (4) Was publicly shamed, disgraced, ridiculed and humiliated and suffered damage to reputation;

   (5) Incurred substantial legal fees;

   (6) Continues to suffer from psychological injuries, emotional and mental anguish and pain; and

   (7) Incurred other items of attendant damages.

## FIRST CAUSE OF ACTION

### Violation of Plaintiff's Fourth and Fourteenth Amendment Rights

69.  Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked 1 through 68 with the same force and effect as if more fully set forth at length herein.

70.  The Individual Police Defendants who were acting within the scope of their

employment, arrested and caused Plaintiff to be imprisoned without probable cause in violation of Plaintiff's right to be free from an unreasonable seizure under the Fourth Amendment to the Constitution of the United States and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

## SECOND CAUSE OF ACTION

### Malicious Prosecution/Fourth Amendment Rights

71. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked 1 through 70, with the same force and effect as if more fully set forth at length herein.

72. The acts and conduct of the Individual Police Defendants constitute malicious prosecution under the Fourth Amendment to the Constitution of the United States. Defendants commenced and continued a criminal proceeding against Plaintiff. There was actual malice and an absence of probable cause for the proceeding. In addition, the proceeding terminated favorably to Plaintiff when on November 6, 2010, the Bronx District Attorney's Office declined to prosecute Plaintiff for any charges.

## THIRD CAUSE OF ACTION

### Violation of Plaintiff's Fourth Amendment Rights

73. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked 1 through 72 with the same force and effect as if more fully set forth at length herein.

73. The invasive and repeated strip searches and physical touching of Plaintiff's chest and genital area by the Individual Police Defendants was an objectively unreasonable search and seizure of Plaintiff in violation of her right to be free of an unreasonable search and seizure under the Fourth Amendment to the Constitution of the United States and under the laws of the State of New York and under the Fourth Amendment to the United States Constitution. There was no threat to the safety of the officer or loss of evidence. The Individual Police Defendants did not have reasonable suspicion that Plaintiff was concealing a weapon or other contraband on her person, and particularly not on her breast or genital area.

## FOURTH CAUSE OF ACTION

### Monell/42 U.S.C. § 1983 Claim Against Defendant City of New York

74. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked 1 through 73 with the same force and effect as if more fully set forth at length herein.

75. The violation of Plaintiff's constitutional rights and resultant injuries were further directly, proximately and substantially caused by conduct, chargeable to Defendant City, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, that are in the custody of the NYPD, namely, the institution and implementation of grossly negligent, reckless and/or deliberately inadequate or unlawful policies, procedures, regulations, practices and/or customs subjecting transgender individuals to invasive searches of their chest and genital areas and/or partial or full strip searches for the purpose of ascertaining genital or gender status; and or the

deliberate indifference by policymaking officials at the NYPD with respect to their obligation to properly instruct, train, supervise and discipline their employees, including the defendants in this case, with respect to such matters.

76. The aforesaid deliberate or de facto policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for Defendant City, including, but not limited to, the Commissioner of the NYPD, Mr. Raymond W. Kelly, and the Mayor of the City of New York, Michael Bloomberg, who knew:

   1. to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the arrest of transgender individuals;

   2. that such issues either present employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of employees mishandling such situations; and

   3. that the wrong choice by municipal employees concerning such issues will frequently cause the deprivation of the constitutional rights of a transgender individual and cause constitutional injury.

77. Despite their knowledge of said policies, procedures, regulations, practices and/or customs, the supervisory and policymaking officers and officials of Defendant City, as a matter of policy, perpetuated, or failed to take preventative or remedial measures to terminate said policies, procedures, regulations, practices and/or customs, did not discipline or otherwise properly supervise the individual personnel who engaged in them, did not effectively instruct, train and/or supervise such personnel (including the defendants herein) with regard to the proper constitutional and statutory requirements in the exercise of their authority, but instead sanctioned

13

the policies, procedures, regulations, practices and/or customs, described above, with a deliberate indifference to the effect of said policies, procedures, regulations, practices and/or customs upon the constitutional rights of residents of the State of New York.

78. The aforesaid policies, procedures, regulations, practices and/or customs of Defendant City were collectively and individually a substantial factor in bringing about the aforesaid violations of Plaintiff's rights under the Constitution and laws of the United States and in causing her damages.

79. Under the principles of municipal liability for federal civil rights violations, New York City's Police Commissioner (or his authorized delegates) has final responsibility for training, instructing, supervising and disciplining employees in his office regarding their conduct.

80. Under the principles of municipal liability for federal civil rights violations, New York City's Police Commissioner (or his authorized delegates), has final responsibility for training, instructing, supervising and disciplining employees of the NYPD with respect to their arrest and treatment of transgender individuals while they are in custody.

81. During all times material to this Complaint, New York City's Police Commissioner owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs and practices sufficient to deter and to avoid conduct by his subordinates violating the aforementioned constitutional rights of transgender individuals.

82. New York City's Police Commissioner personally and/or through his authorized delegates, at all relevant times had final authority to promulgate and implement policies and procedures, including policies and procedures as to personal hiring, training and supervision, with

respect to his Department's performance of its duties.

83. New York City's Police Commissioner personally and/or through his authorized delegates, at all relevant times had final authority, and constitutes a City policymaker for whom the City is liable, with respect to the above-mentioned areas.

## JURY DEMAND

84. Plaintiff hereby demands trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a. Enter a judgment declaring unconstitutional Defendants' policies, practices and/or customs of subjecting transgender individuals to searches of their chest and genital areas conducted for the purpose of ascertaining genital or gender status.

b. For compensatory damages in an amount to be determined;

c. For punitive damages in an amount to be determined;

d. For reasonable attorneys' fees, together with costs and disbursements, pursuant to § 1988 and this Court's discretion;

e. For pre-judgment interest as allowed by law; and

f. For such other and further relief as this Court may deem just and proper.

DATED:   August 17, 2011
         New York, New York

Yours, etc.

By: ANTHONY CECUTTI
(AC 5867)
100 Lafayette Street, Suite 401
New York, New York 10013
(917) 741-1837

TO: CITY OF NEW YORK
c/o Corporation Counsel
100 Church Street
New York, New York 10007

MICHAEL BLOOMBERG
Mayor of the City of New York
City Hall
New York, New York 10007

RAYMOND W. KELLY
New York City Police Commissioner
Police Headquarters
1 Police Plaza
New York, New York 10038

## ATTORNEY VERIFICATION

State of New York   )
                    )   ss.:
County of New York  )

ANTHONY CECUTTI, ESQ., an attorney duly admitted to practice before the courts of this district, affirms the following under penalty of perjury:

I am an attorney who represents the Plaintiff in this action. I have read the foregoing and know the contents thereof; the same is true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and that as to those matters deponent believes them to be true. The reason this verification is made by me and not by the plaintiff is that she resides outside of New York County, the location of my offices.

_____
ANTHONY CECUTTI